

# U. S. Department of Justice

*United States Attorney*
*Northern District of Iowa*

| | |
|---|---|
| *Mailing Address:* | *Shipping Address:* |
| P.O. Box 74950 | *401 First Street S.E.* |
| Cedar Rapids, Iowa 52407-4950 | *Suite 400* |
| (319) 363-6333 | Cedar Rapids, Iowa 52401-1825 |
| | FAX (319) 363-1990 |

October 12, 2005

Crystal L. Usher
101 First Street SW, Suite 100
Cedar Rapids, Iowa 52404

Re: *United States v. Terry Lee Mess, CR 05-1025*

Dear Ms. Usher:

This letter will serve as a memorandum of a proposed plea agreement between the United States Attorney's Office for the Northern District of Iowa and Terry Lee Mess, defendant. All references to the "United States" or "government" in this proposed plea agreement refer to the United States Attorney's Office for the Northern District of Iowa and to no other governmental entity.

## CHARGES AND PENALTIES

1. *TLM* The defendant will plead guilty to Count 2 of the Indictment filed on August 24, 2005, which charges him with attempt to manufacture 50 grams or more of actual methamphetamine (pure) after having previously been convicted of a felony drug offenses in violation of 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(A) and 851. The defendant understands that this offense is punishable by a mandatory minimum sentence of 20 years and the following maximum penalties: (1) not more than life imprisonment without the possibility of parole; (2) a fine of not more than $8,000,000; (3) a mandatory special assessment of $100; and (4) a term of supervised release of at least 10 years and not more than life.

2. *TLM* The defendant understands that restitution and a term of supervised release following incarceration may be imposed in addition to any other sentence. The defendant further acknowledges that if he violates, at any time, any condition of supervised release, he could be returned to prison for the full term of supervised release and the court is not required to grant credit for any amount of time the defendant may have successfully completed on supervised release. The defendant also understands that the U.S. Sentencing Guidelines will provide advisory guidance to the court in determining a sentence in this case.



GOVERNMENT
EXHIBIT

3. _TLM_ At the time the guilty plea is entered, the defendant will admit that he is guilty of the charge specified in Paragraph 1 of this agreement. After sentencing the government will move for dismissal of any remaining counts. The U.S. Attorney's Office for this District will file no additional Title 21 drug-related criminal charges based upon information now in our possession or information later provided by the defendant under the conditions set forth in the "Cooperation" section below. If this office becomes aware of evidence of additional crimes warranting criminal prosecution, all information in our possession could be used in such a prosecution.

4. _TLM_ The defendant understands and agrees he has the absolute right to plead guilty before a United States District Court Judge. However, if convenient to the court, the defendant agrees to waive and give up this right and to plead guilty before a United States Magistrate Judge. Defendant understands he will not be found guilty unless the United States District Court Judge accepts the plea of guilty or adopts a recommendation of the Magistrate Judge to accept such plea. Defendant agrees to execute the attached consent to proceed before the United States Magistrate Judge.

## COOPERATION

5. _TLM_ The defendant agrees to fully and completely cooperate with the United States Attorney's Office and other law enforcement agencies in the investigation of criminal activity within the Northern District of Iowa and elsewhere.

6. _TLM_ Full and complete cooperation with the United States Attorney's Office and law enforcement agencies shall include but is not limited to the following:

A. providing intelligence information;

B. arranging for the purchases of controlled substances and/or other evidence by defendant and/or undercover agents;

C. providing the introduction of undercover agents to controlled substance traffickers and/or targets of the investigation;

D. providing information to secure search warrants, if feasible;

E. providing testimony before the federal grand jury and, if necessary, testimony before any court as a witness in any prosecutions growing out of this or any related investigation;

F. providing any documents or other items in the defendant's custody, possession or under the defendant's control that are relevant to this or any related investigation;

G.  making defendant available for interview and debriefing sessions by government attorneys and law enforcement agents upon request;

H.  recording conversations related to any investigation as requested; and

I.  engaging in and conducting other activities as directed by the law enforcement agents in charge of the investigation.

7. _TLM_   The defendant will provide complete and truthful information to the government, law enforcement officers and the federal grand jury conducting this investigation. The defendant will answer all questions concerning this investigation and will not withhold any information. The defendant will neither attempt to protect any person or entity through false information or omission, nor falsely implicate any person or entity. The defendant will at all times tell the truth and nothing but the truth during any interviews or as a witness, regardless of who asks the questions - the prosecutors, defense attorneys, investigating agents, probation officers or the judge. Since the United States insists upon the defendant telling the truth and nothing but the truth during any court proceeding, grand jury proceeding or government interview related to this case, failure to provide complete and truthful information at any such time will constitute a breach of this agreement.

8. _TLM_   No testimony or other information provided by the defendant pursuant to this agreement to the United States Attorney's Office, federal or state law enforcement officers, employees of the government, or to the federal grand jury conducting this investigation, or any information directly or indirectly derived from such testimony or other information, will be used against the defendant for the purpose of bringing additional Title 21 criminal charges in the Northern District of Iowa, provided the defendant does not violate or withdraw from the terms of this agreement pursuant to which the grant of "limited use immunity" is being made. However, such testimony or other information may and will be used

A.  in a prosecution for perjury or giving a false statement;

B.  to impeach the defendant's credibility, for purposes of cross-examination and for purposes of a rebuttal case in any proceeding;

C.  in any asset forfeiture matter;

D.  by the court or probation office at any time, including at the time of the defendant's guilty plea and sentencing in this matter and to determine the length of the defendant's sentence; and

E.  in any proceeding concerning a breach of this agreement.

The "limited use immunity" granted by this agreement extends only to acts committed by the defendant on or before the date shown at the top of this agreement and does not apply to any prosecution for acts committed by the defendant after that date. Further, this agreement grants no immunity whatsoever for any information provided by the defendant pertaining to any death, murder, rape or forcible felony. It is agreed that information provided by the defendant in the course of any "proffer" may be relied upon and considered under the terms and conditions of this agreement. The defendant understands the obligation of the United States to provide all information in its file regarding the defendant to the United States Probation Office and the court.

9. _TLM_ It is understood that, upon request by the government, the defendant will voluntarily submit to a polygraph examination. If performance in any polygraph examination suggests a conscious intent to deceive, mislead or lie and the totality of circumstances convinces the government that the defendant's statement is not complete and truthful, the defendant will be so informed and any and all obligations imposed on the government by this agreement will be rendered null and void. This decision to nullify the agreement will be in the sole discretion of the United States Attorney's Office for the Northern District of Iowa.

10. _TLM_ The defendant shall not reveal or discuss the existence or conditions of this agreement or the defendant's cooperation to any person other than the defendant's attorney and law enforcement personnel involved in this investigation. Nor shall the defendant or any agent of the defendant disclose to any person, directly or indirectly, other than to the defendant's attorney, without prior written authorization from the government, the true identity or occupation of any law enforcement personnel participating in this investigation in an undercover capacity or otherwise. Nor shall the defendant or any agent of the defendant disclose to any person, without prior written approval of the government, the location of investigative offices, surveillance locations, or the nature of investigative techniques used by agents in this investigation. Nothing in this paragraph is intended to restrict or prohibit the defendant from providing complete and truthful testimony in any court proceeding. Furthermore, this agreement does not prohibit the defendant from speaking with an attorney for a party adverse to the government in any litigation concerning the defendant's possible testimony in that litigation. While the defendant is under no obligation to speak with such an attorney, the defendant is free to do so if the defendant chooses. That decision rests solely with the defendant as it does with any witness.

11. _TLM_ Nothing in this agreement requires the government to accept any cooperation or assistance that the defendant may offer or propose. The decision whether and how to use any information and/or cooperation that the defendant provides (if at all) is in the exclusive discretion of the United States Attorney's Office.

## STIPULATION OF FACTS

12. By initialing each of the following paragraphs, the defendant stipulates to the following facts. He agrees that these facts are true and may be used to establish a factual basis for his guilty plea and sentence. He also agrees that this stipulation may be used against him should he violate or refuse to follow through on this plea agreement.

A. On October 1, 1990, defendant was convicted of unlawful delivery of a controlled substance in *State of Illinois v. Terry Lee Mess*, in the Circuit Court of the 15th Judicial Circuit for Jo Daviess County, Case No. 90-CF-33, a felony drug trafficking offense.

B. On November 2, 1999, defendant was convicted of conspiracy to manufacture methamphetamine in *State of Iowa v. Terry Mess,* in the District Court of Iowa for Dubuque County, Case No. FECR 035191, a felony drug trafficking offense.

C. On or about March 8 and 9, 2005, defendant Terry Lee Mess did knowingly and intentionally attempt and aid and abet the attempt to manufacture 50 grams or more of actual methamphetamine (pure), a Schedule II controlled substance and knowingly possessed pseudoephedrine and red phosphorus, list I chemicals, knowing and having reasonable cause to believe that the chemicals would be used in the manufacture of methamphetamine. Defendant planned on making a large quantity of methamphetamine on March 10, 2005, with John McAtee. Defendant went to Madison, Wisconsin, on February 24 and March 8, 2005, to obtain matches and pseudoephedrine. Defendant and John McAtee used the name "J&R Distributing" to obtain pseudoephedrine from a wholesaler in Madison.

D. On March 9, 2005, law enforcement executed a search warrant at John McAtee's residence located at 3238 200th Avenue, Hopkinton, Iowa. The defendant, John McAtee, Lee Shaffer, and Kami Miller were found inside the residence. During the search, officers found numerous items used in the manufacture of methamphetamine via the red phosphorus method, including iodine crystals, tincture of iodine, hydrogen peroxide, muriatic acid, two-layered liquids containing pseudoephedrine, Red Devil lye, Coleman fuel, Heet, red phosphorus, and 5 cases of matches in the process of being stripped to remove red phosphorus. Officers also found a mixture or substance containing methamphetamine, 101 boxes of pseudoephedrine and packaging indicating that additional pseudoephedrine had been used in the manufacture or attempted manufacture of methamphetamine (approximately 666 grams). McAtee

was found in the basement near 101 boxes of pseudoephedrine and iodine crystals being rinsed in the sink. The defendant was found upstairs near cases of match books being processed to remove the red phosphorus. The pseudoephedrine seized on March 8 and 9, 2005, would produce more than 50 grams of actual (pure) methamphetamine with a maximum theoretical yield is 613 grams of actual (pure) methamphetamine. Each case of matches contained 25 grams of red phosphorus. (125 grams). Receipts from the Madison Cash and Carry store and the defendants day planner calendar show that John McAtee and the defendant obtained 150 boxes of pseudoephedrine and five cases of matches on March 8, 2005.

## SENTENCING PROVISIONS

13. _TLM_ The United States makes no promises as to the sentence to be imposed. The defendant understands and agrees to be sentenced based on facts to be found by the sentencing judge by a preponderance of the evidence and agrees facts essential to the punishment need not be (1) charged in the indictment; (2) proven to a jury; or (3) proven beyond a reasonable doubt. The defendant agrees that the district court will determine the appropriate sentence after considering a variety of factors, including: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for the sentence to afford adequate deterrence to criminal conduct; (4) the need for the sentence to protect the public from further crimes of the defendant; and (5) the need for the sentence to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (6) the need to avoid unwarranted sentencing disparities among defendants with similar criminal records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. Defendant understands that the court will also consider the kinds of sentence and the sentencing range established by the United States Sentencing Guidelines for the applicable category of offense(s) committed by defendant and will consider any pertinent policy statements issued as part of the Guidelines. The court will consider relevant adjustments under the United States Sentencing Guidelines, which will include a review of such things as the defendant's role in the offense, his criminal history, his acceptance or lack of acceptance of responsibility and other considerations. The court may also consider other information including any information concerning the background, character, and conduct of the defendant.

14. _TLM_ During plea negotiations the parties may have discussed how various factors could impact the court's sentencing decision and the determination of the advisory sentencing guidelines range. The parties agree, however, that discussions did not result in any express or implied promise or guarantee concerning the actual sentence to be imposed by the court. The defendant further understands that he will

have no right to withdraw his guilty plea if the sentence imposed is other than he hoped for or anticipated.

15. *TLM* The parties stipulate and agree that the United States Sentencing Guidelines should be applied as follows:

A. **Base Offense Level:** For Count 2, the parties stipulate and agree that pursuant to USSG § 2D1.1, the appropriate base offense level is at least **36** based upon the defendant's involvement in at least 500 grams of actual (pure) methamphetamine and 125 grams of red phosphorus. The government is free to present evidence and arguments to support the stipulation and, if warranted, a higher base offense level.

B. **Career Offender:** As to Count 2, the parties stipulate and agree that pursuant to the Career Offender Guideline, USSG § 4B1.1(A), the appropriate offense level is **37**, and defendant's criminal history category is **VI**, based upon the defendant's criminal history (which includes two prior felony convictions for controlled substance offenses) and the statutory maximum sentence of life imprisonment applicable under 21 U.S.C. § 841(b)(1)(A).

C. **Acceptance of Responsibility:** The parties stipulate and agree, that as of the date of this agreement, defendant appears to qualify for a **two-level** downward adjustment for acceptance of responsibility. However, the government shall be free to contest this adjustment should the defendant subsequently fail to continue to accept responsibility by failing to pay the special assessment; by providing false information to the court, the probation office, or the government; by unlawfully using controlled substances; by attempting to obstruct justice; by breaching this plea agreement; or by acting in a way that is inconsistent with, or failing to act in any way that is consistent with, the granting of the adjustment under USSG § 3E1.1(a).

D. The parties stipulate and agree that a reasonable sentence should be no lower than the bottom of the range of 292 to 365 months.

E. The defendant understands that the court **is not** bound by the stipulation of the parties, nor is it bound by the sentencing range as determined pursuant to the sentencing guidelines. As noted above, this plea agreement provides for no guarantee concerning the actual sentence to be imposed.

16. *TLM* The defendant, his attorney and the United States may make whatever comment and evidentiary offer they deem appropriate at the time of the guilty plea, sentencing or any other proceeding related to this case, so long as the offer or comment does not violate any other provision of this agreement. The parties are also free to provide all relevant information to the probation office for use in preparing the presentence report.

## POTENTIAL FOR DEPARTURE OR CREDIT

17. *TLM* The defendant understands and agrees that because the United States has agreed to dismiss Count 1 which carries a mandatory life sentence and proceed with a plea on Count 2 which carries a mandatory 20 year sentence, the United States will not make a motion for downward departure under §5K1.1 or any other provision of the United States Sentencing Guidelines or under 18 U.S.C. § 3553(e) or any other provision of law.

## FINANCIAL MATTERS

18. *TLM* The defendant agrees to pay a special assessment of $100 as required by 18 U.S.C. § 3013. Using the enclosed payment coupon, the defendant or his representative will send or deliver the special assessment payment to the U.S. District Clerk of Court, P. O. Box 74710, Cedar Rapids, IA 52407-4710. Payment must be in the form of a money order made out to the "U.S. District Clerk of Court." The special assessment must be paid before this signed agreement is returned to the U.S. Attorney's Office. If defendant fails to pay the special assessment prior to the sentencing, defendant stipulates that a downward adjustment for acceptance of responsibility under USSG § 3E1.1 is not appropriate unless the court finds defendant has no ability to pay prior to the sentencing.

19. *TLM* The defendant agrees to fully and truthfully complete the enclosed financial statement. Further, upon request, he agrees to provide the U.S. Attorney's Office with any information or documentation in his possession or control regarding his financial affairs and agrees to submit to a debtor's examination when requested. The defendant agrees to provide this information whenever requested until such time any judgment or claim against him, including principal and interest, is satisfied in full. This information will be used to evaluate his capacity to pay any claim or judgment against him.

## FORFEITURE

20. *TLM* The defendant agrees to forfeit, abandon, give up, and give away to the United States prior to the date of sentencing herein, any right, title and interest the defendant may have in property subject to forfeiture pursuant to 21 U.S.C. §§ 853 and 881 and 18 U.S.C. §§ 924 and 981.

21.*TLM* The defendant agrees to forfeit and abandon any and all claim to items seized by law enforcement from the defendant at the time of any arrest or search, including defendant's arrest and the search of the McAtee residence on March 9, 2005. The defendant understands that from this date forward any local, state, or federal law enforcement agency may take custody of and use, dispose, and transfer these items in any way the agency deems appropriate.

## GENERAL MATTERS

22. *TLM* The defendant shall not violate any local, state or federal law during the pendency of this agreement. Any law violation, with the exception of speeding or parking tickets, committed by the defendant will constitute a breach of this agreement and may result in the revocation of the entire agreement or any of its terms. The defendant or his attorney shall notify this office within 48 hours if the defendant is questioned, charged or arrested for any law violation.

23. *TLM* If the defendant violates **any** term or condition of this plea agreement, in **any** respect, the entire agreement will be deemed to have been breached and may be rendered null and void by the United States. The defendant understands, however, that the government may elect to proceed with the guilty plea and sentencing. These decisions shall be in the sole discretion of the United States. If the defendant does breach this agreement, he faces the following consequences: (1) all testimony and other information he has provided at any time (including any stipulations in this agreement) to attorneys, employees or law enforcement officers of the government, to the court, or to the federal grand jury, may and will be used against him in any prosecution or proceeding; (2) the United States will be entitled to reinstate previously dismissed charges and/or pursue additional charges against the defendant and to use any information obtained directly or indirectly from the defendant in those additional prosecutions; and (3) the United States will be released from any obligations, agreements or restrictions imposed upon it under this plea agreement.

24. *TLM* The defendant waives all claims he may have based upon the statute of limitations, the Speedy Trial Act, and the speedy trial provisions of the Sixth Amendment to the Constitution. The defendant also agrees that any delay between the signing of this agreement and the final disposition of this case constitutes excludable time under 18 U.S.C. § 3161 *et seq.* (the Speedy Trial Act) and related provisions.

25. *TLM* Any dismissal of counts or agreement to forego filing charges is conditional upon final resolution of this matter. If this agreement is revoked or the defendant's conviction is ultimately overturned, the United States retains the right to reinstate previously dismissed counts and to file charges which were not filed because of this agreement. Dismissed counts may be reinstated and uncharged offenses may be filed if: (1) the plea agreement is revoked, or (2) the defendant successfully challenges his conviction through a final order in any appeal, cross-appeal, habeas

corpus action or other post-conviction relief matter. A final order is an order not subject to further review or an order which no party challenges. The United States may reinstate any dismissed counts or file any uncharged offenses within 90 days of the filing date of the final order. The defendant waives all constitutional and statutory speedy trial rights he may have. The defendant also waives all statute of limitations or other objections or defenses he may have related to the timing or timeliness of the filing or prosecution of charges referred to in this paragraph.

26. *TLM* After conferring with his attorney and after being advised of his appeal rights, the defendant knowingly and voluntarily waives his right to appeal his conviction and the sentence imposed. The defendant also waives his right to file post-conviction relief actions, including actions pursuant to 28 U.S.C §§ 2255 and 2241, *coram nobis* actions and motions to reconsider or reduce his sentence. The defendant retains his right to appeal or contest his sentence in the following limited circumstances: (1) if the sentence is not in accordance with this plea agreement; (2) if the sentence imposed exceeds the maximum statutory penalty; (3) if the sentence is unconstitutionally defective. Further, after being fully advised of the implications, the defendant knowingly and voluntarily waives his right to file post-conviction relief actions, including actions pursuant to 28 U.S.C. §§ 2255 and 2241 and *coram nobis* actions. This waiver does not, however, prevent him from challenging the effectiveness of his attorney after conviction and sentencing. Defendant does not have any complaints at this time about the effectiveness of his attorney. The waivers set out above relate to any issues which now exist or which may arise in the future. The defendant agrees to these waivers in order to cause the government to accept the provisions and stipulations of this plea agreement, to avoid trial, and to have his case finally concluded. The defendant understands that at the conclusion of his sentencing hearing, the court will note that the defendant's appeal rights are limited by this waiver. No assurances or promises have been made by any party as to what the defendant's ultimate sentence will be.

27. *TLM* The defendant understands and agrees that, consistent with the provisions of 18 U.S.C. § 3143, he will be taken into U.S. Marshals' custody at the conclusion of the guilty plea hearing and will be detained pending sentencing. This is regardless of whether a U.S. Magistrate Judge or U.S. District Court Judge presides at the guilty plea hearing and regardless of whether his plea is immediately accepted or formal acceptance is deferred until a later date.

## ACKNOWLEDGMENT OF DEFENDANT'S UNDERSTANDING

28. *TLM* The defendant acknowledges that he has read each of the provisions of this entire plea agreement with the assistance of counsel and understands its provisions. He has discussed the case and his constitutional and other rights with his attorney. The defendant understands that by entering a plea of guilty he will be giving up his right to plead not guilty; to trial by jury; to confront, cross-examine and

compel the attendance of witnesses; to present evidence in his defense; to remain silent and refuse to be a witness against himself by asserting his privilege against self-incrimination and to be presumed innocent until proven guilty beyond a reasonable doubt. The defendant agrees that his attorney has represented him in a competent manner and has no complaints about that lawyer's representation. The defendant states that he is not now on or under the influence of any drug, medication, liquor, or other intoxicant or depressant, whether prescribed by a physician or not, which would impair his ability to fully understand the terms and conditions of this plea agreement.

29. *TLM* The defendant acknowledges that he is entering into this plea agreement and is pleading guilty freely and voluntarily because he is guilty and for no other reason. The defendant further acknowledges that he is entering into this agreement without reliance upon any discussions between the government and him (other than those specifically described in this plea agreement), without promise of benefit of any kind (other than any matters contained in this plea agreement) and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges his understanding of the nature of each offense to which he is pleading guilty, including the penalties provided by law.

30. *TLM* The defendant further understands that he will be adjudicated guilty of each offense to which he will plead guilty and may thereby be deprived of certain rights, including but not limited to, the right to vote, to hold public office, to serve on a jury and to possess firearms or ammunition. The defendant understands that the government reserves the right to notify any state or federal agency by whom he is licensed, or with whom he does business, of the fact of his conviction.

## VERIFICATION

31. *TLM* This letter constitutes the entire agreement between the parties. No other promises of any kind, express or implied, have been made to the defendant by the United States or its agents. No additional agreement may be entered into unless in writing and signed by all parties. The agreement will not be deemed to be valid unless and until all signatures appear where indicated below.

If this agreement is acceptable, please have your client indicate acceptance by placing his initials on the line preceding each of the above paragraphs and by signing below where indicated. By initialing each paragraph and signing below, the defendant acknowledges that he has read, fully understands, and agrees to each paragraph of this agreement. Please return all enclosures, completed and signed, with this signed letter to the U.S. Attorney's Office.

October 12, 2005
Page 12

Finally, please remember to pay the special assessment, as agreed above, directly to the Clerk of Court. That payment must be remitted to the Clerk before this agreement is returned to our office.

Thank you for your cooperation.

Sincerely,

CHARLES W. LARSON, SR.
United States Attorney

By, *Daniel C. Tvedt*

DANIEL C. TVEDT
Assistant United States Attorney

**ENCLOSURES:**
**Financial Statement Form**
**Special Assessment Payment Coupon**
**Consent to Proceed Before Magistrate Judge**

The undersigned defendant, with advice of counsel, accepts the terms of this plea agreement. The undersigned Assistant United States Attorney accepts the terms of the executed plea agreement.

| | |
|---|---|
| *Terry Lee Mess* 10-19-05 | *Daniel C. Tvedt* 10-19-05 |
| TERRY LEE MESS          Date | DANIEL C. TVEDT          Date |
| Defendant | Assistant United States Attorney |

*Crystal L. Usher* 10-19-05
CRYSTAL L. USHER          Date
Attorney for Defendant